585 A.2d 232

ERIE INSURANCE COMPANY

v.

**Jonetta CHOPS et al.**

**No. 123, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 11, 1991.

William M. Rudd (Anderson, Rudd & Donahue, both on brief), Cumberland, for appellant.

Nicholas J. Monteleone (Hidey, Coyle & Getty, both on brief), Cumberland, for appellees.

Argued before ELDRIDGE, RODOWSKY McAULIFFE and CHASANOW, JJ., HARRY A. COLE * and WILLIAM H. ADKINS,** Associate Judges of the Court of Appeals (retired), and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

McAULIFFE, Judge.

Jonetta Chops and her husband ("the Chops") suffered damages as a result of an automobile accident which occurred on 8 September 1983, in Morgantown, West Virginia. For purposes of this case, the parties agree that the accident was solely the fault of Carol Iser, who was driving an automobile owned by her and registered in Maryland. At the time of the accident, Iser's vehicle was uninsured, because on 4 July 1983, just over two months before the

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

** Adkins, J., was a member of the Court at the time the appeal was argued but retired prior to the adoption of this opinion.

accident, Erie Insurance Company (Erie) had cancelled Iser's automobile liability insurance policy for nonpayment of premium. Notwithstanding the lack of insurance, the plaintiffs [1] sued Erie in the Circuit Court for Allegany County, alleging Erie was liable because it had breached a duty imposed upon it by statute to immediately notify the Motor Vehicle Administration (MVA) of the cancellation of Iser's automobile insurance policy. The plaintiffs argued that Erie's violation of the statute made it liable just as if the insurance policy had not been cancelled or, in the alternative, that Erie's violation of the statute was evidence of negligence which was a proximate cause of the plaintiffs' loss. Following a trial before the court, essentially on stipulated facts, the plaintiffs were granted judgment against Erie [2] in the amount of $22,416 and costs. Erie appealed to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before the case was considered by the intermediate appellate court.

The question before us is whether Erie was properly found liable, either under a theory of negligence, or of strict liability on a private cause of action created by statute. Rather clearly, we think, the trial judge's determination that Erie failed to notify the MVA of the cancellation of Iser's insurance within the time required by the statute is supported by the evidence. Section 17–106(b) of the Trans-

---

1. At the time this action was brought, the Chops had recovered their damages from their first-party insurer, Westfield Insurance Company, apparently under medical payments, collision, and uninsured motorist's coverage. Westfield is therefore a use plaintiff in this action.

2. The plaintiffs' amended declaration named Iser and Erie as defendants. Immediately prior to trial, all parties stipulated that all counts against Iser "would be dismissed," and that the plaintiffs would proceed only on the two counts naming Erie as defendant. *See* Maryland Rule 2–506(a). There is, however, no docket entry reflecting this dismissal, and judgment was entered against Iser and Erie. Iser did not appeal, but inasmuch as the plaintiffs concede that judgment should not have been entered against Iser, this error should be corrected upon remand.

portation Article, Maryland Code (1977, 1987 Repl.Vol.) requires *immediate* notification:

> After July 1, 1983, each insurer or other provider of required security immediately shall notify the Administration of only those terminations or other lapses that are final and occur within the first 6 months of any required security issued to or provided for a resident of this State.

Iser obtained the required insurance from Erie on 6 January 1983, and made a partial payment of the premium. In April, Erie sent to Iser a notice of proposed cancellation because of Iser's failure to make a required installment payment of the premium. Erie then received an additional partial payment from Iser, and extended the coverage to 4 July 1983. At the same time, Erie notified Iser that if the additional payment due was not received by that time, her insurance would be cancelled effective 4 July 1983. No additional payments were made, and the insurance was cancelled in accordance with the notice. Erie first notified the MVA of the cancellation by letter mailed 14 August 1983, 40 days after the cancellation.[3] The trial judge did not err in finding that this notice failed to satisfy the requirement of the statute that the insurer "immediately

---

3. Erie's representative explained that a large percentage of the policyholders who received notices of cancellation for nonpayment of premiums made payments after the termination date. When those payments were made before notification had been sent to the MVA, Erie was able to reinstate the policy. When the payments were received after notice had been given to the MVA, the policyholder was required to reapply for insurance. To avoid delay and unnecessary paper work, Erie had, several years earlier, programmed its computers to send the required notice to the MVA 35–40 days after cancellation. Erie's representative testified that the company had not received any complaint from the MVA regarding this practice. Until 1 July 1983, there were two Maryland statutes requiring insurers to give notice of cancellations to the MVA. Section 17–106(b) of the Transportation Article, which had been in force since its enactment in 1972 as § 7–102(b) of Article 66½, required "immediate" notice. Section 240AA(c–1), originally enacted by ch. 765 of the Laws of 1974, and effective until its repeal on 1 July 1983, required that notice should be given "promptly."

shall notify" the MVA of terminations or lapses which are final.[4]

■ In an appropriate case, the violation of a statutory regulation is evidence of negligence, and that negligence will be actionable if it is a proximate cause of injury or damage to the plaintiff. *Dean v. Redmiles,* 280 Md. 137, 151–53, 374 A.2d 329 (1977); *Ford v. Bradford,* 213 Md. 534, 541, 132 A.2d 488 (1957). The Court of Special Appeals has noted that the breach of a statutory duty may be considered as some evidence of negligence when the plaintiff is a member of the class of persons the statute was designed to protect and the injury was of the type the statute was designed to prevent. *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 362, 517 A.2d 1122 (1986).

■ Essential to the proof of any cause of action for negligence is the establishment of a legally cognizable duty owed by the defendant to the plaintiff, or to a class of persons to which the plaintiff is a member. *Jacques v. First Nat'l Bank,* 307 Md. 527, 531–34, 515 A.2d 756 (1986). We pointed out in *Jacques* that a "tort duty" does not necessarily coexist with a moral duty, or with a duty imposed by contract, or even with a duty imposed by statute. *Id.* at 534, 515 A.2d 756.

---

**4.** Erie does not contend that the cancellation of Iser's policy effective 4 July 1983 was not "final" within the meaning of the statute. We intimate no view as to what constitutes a "final" termination or lapse of insurance where a policy provides for a specified grace or reinstatement period, or where the insurer has not given appropriate notice to the policyholder that a renewal premium is due. We note that Art. 48A, § 240B requires insurers to give policyholders notice at least 17 days in advance of the date on which a *renewal* premium is due, and provides that where such notice is not given, the insurer must afford coverage for any claim arising within 45 days after the date the insured discovers or should have discovered that the policy had not been renewed. The payment due from Iser was an installment payment on the original premium, and not a renewal premium. Moreover, Erie notified Iser on 20 April that cancellation would occur on 4 July unless payment of the balance of the premium was received on or before that date.

Plaintiffs do not contend that Erie's failure to immediately notify the MVA proximately caused the accident. Rather, they contend that Erie's omission caused Iser to be uninsured at the time of the accident. They reason that if Erie had given notice to the MVA, the MVA would have notified Iser that the registration for her motor vehicle was suspended, and Iser would probably have obtained the required insurance or stopped operating the unregistered and uninsured motor vehicle.[5]

This theory of liability immediately raises questions of causation, and one of the contentions pressed by Erie on appeal is that the plaintiffs' evidence was insufficient to support a finding that Erie's delay in giving notice to the MVA was a proximate cause of Iser's operation of an uninsured motor vehicle on the date of the accident.[6] Erie

---

**5.** Section 17-106(a) of the Transportation Article provides that if the required security for a motor vehicle terminates or otherwise lapses, the registration of that vehicle is suspended as of the date of the termination or lapse. Section 17-106(c) requires the MVA, upon receipt of notice of lapse or termination from an insurer, to "make a reasonable effort to notify the owner of the vehicle that his registration has been suspended." Section 17-106(d) provides that if the owner does not surrender all evidence of registration to the MVA within 48 hours after being notified of the suspension, the MVA "[s]hall attempt to recover from the owner the evidences of registration" and may suspend the owner's license to drive until the evidences of registration are surrendered.

**6.** Plaintiffs did not offer any evidence with regard to the usual practices of the MVA concerning notification to an owner following receipt of notice of lapse from an insurer, or concerning the usual time lag between the sending of notification to an owner and referral to a field investigator. Nor did the plaintiffs offer any evidence concerning the number of field investigators available in the area of the State where Iser lived, or bearing on the probability that direct contact would have been made with Iser before the date of the accident if immediate notice had been given by Erie. The question of effective notice to Iser was further clouded by the fact that Iser did not live at the address of record she had given the MVA. Moreover, evidence offered by Erie demonstrated that the notice of cancellation sent by Erie to the MVA on 14 August 1983 was not processed by the MVA until sometime after 13 September 1983. Erie thus argues that even if it had given immediate notice to the MVA, it is at best

also contends that plaintiffs' failure to offer any evidence of Iser's financial ability to pay the damages is fatal to the plaintiffs' cause of action, because the absence of insurance coverage would be of no consequence if plaintiffs were able to collect their judgment from Iser without difficulty.

We do not reach these issues of causation because we hold that the duty imposed upon Erie by the statute was not a "tort duty"; that is, the statute did not create a legally cognizable duty running from Erie to all persons who might thereafter suffer economic damage by reason of involvement in an accident with an uninsured motorist upon Erie's failure to give immediate notice to the MVA of the termination of coverage. We further hold that the legislature did not intend to create a new cause of action imposing strict liability on an insurer who failed to give immediate notice of cancellation to the MVA.

In *Jacques,* we discussed the factors to be considered in determining whether a particular duty should be recognized as one supporting a claim for damages for its breach. We said:

> In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability. (Footnotes and citations omitted.)

---

conjectural that Iser would have received effective notice from the MVA before the accident occurred.

307 Md. at 534–35, 515 A.2d 756. *See also Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 751–54, 556 A.2d 1126 (1989); *Council of Co–Owners v. Whiting–Turner*, 308 Md. 18, 32–35, 517 A.2d 336 (1986); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 327–28, 424 A.2d 744 (1981).

■ As we have noted, the nature of the harm that the legislature sought to protect against by the enactment of § 17–106(b) and related statutes was economic. Unlike the statutes governing the operation of vehicles on the highways, which have as their principal focus the safety of other motorists and pedestrians and the prevention of accidents, § 17–106(b) and related required security statutes seek to insure that there will be at least minimum limits of financial responsibility in the event an accident does occur. In short, the principal risk against which the statute is directed is the risk of economic loss, and not the risk of personal injury. Thus, in the absence of some indication of a contrary intention on the part of the legislature, a tort duty ordinarily will be recognized only where there is "an intimate nexus between the parties." *Jacques*, 307 Md. at 534, 515 A.2d 756. Here, no intimate nexus existed between Erie and the Chops. There was neither contractual privity nor its equivalent. The Chops were simply members of the general public who could have become involved in an accident with Iser.

Certainly, as the plaintiffs point out, recognition of a tort duty under these circumstances might serve as an additional inducement to insurers to give immediate notice of cancellation to the MVA. But that rationale would apply to most duties, and in the absence of other circumstances indicating that a tort duty should be recognized, it remains for the legislature to determine whether such a sanction is required.[7]

---

7. As we pointed out in note 3, until 1 July 1983, the requirement that an insurer notify the MVA of cancellation or nonrenewal of a motor vehicle liability insurance policy was found not only in the Transportation Article, but also in the insurance code. Maryland Code (1957,

The plaintiffs argue that in the past the legislature specifically mandated the sanction of strict liability against an insurer for a violation of the notice provision which appeared in the insurance code. As a result, they argue, this Court should continue to recognize this legislative intent, notwithstanding the apparently inadvertent failure of the legislature to include the sanction in the Transportation Article. The plaintiffs incorrectly interpret the relevant statutes. Although the legislature has mandated insurance coverage in several instances as a sanction for noncompliance with insurance code requirements,[8] it has not done so in these sections when nonpayment of the premium was the cause for cancellation.

Specifically, the plaintiffs argue that prior to 1983, when requirement of notice to the MVA was found at Art. 48A, § 240AA(c–1), the sanction for noncompliance was fixed by Art. 48A, § 240D, which mandated continued coverage. They contend that the legislature must have intended the same sanction to apply when, by ch. 617 of the Laws of 1983, it made the notice provision in the Transportation Article controlling. The basic problem with the plaintiffs' argument is that they misread § 240D. That section provides:

---

1979 Repl.Vol.) Art. 48A, § 240AA(c–1). Violation of that section subjected the insurer to sanction by the Insurance Commissioner. Article 48A, §§ 1, 24, 55, 55A. *Cf. Magan v. Medical Mutual*, 81 Md.App. 301, 307–09, 567 A.2d 503 (1989). Although the legislature has not, as it did in Art. 48A, § 481C, provided specifically that a violation of a particular section of the Transportation Article also constitutes a violation of the insurance code, there clearly is a close relationship between the insurance code and the required security provisions of the motor vehicle laws (see Art. 48A, § 479) and an argument may be made that a violation of § 17–106(b) may properly be addressed by the Insurance Commissioner. Additionally, see § 27–101(a) of the Transportation Article, providing that it is a misdemeanor for any person to violate any of the provisions of the Maryland Vehicle Law.

8. Also, the legislature has, on an earlier occasion, provided that automobile liability insurance required by law could not be cancelled until after notice had been given to the MVA. Maryland Code (1957, 1967 Repl.Vol.) Art. 66½, § 142.

If an insurer fails to comply with any provision of §§ 240A, 240AA, 240B, or 240C, such insurer shall be liable to the applicant for the coverage which was requested, or which would have become effective except for the failure to comply with these sections, unless the person seeking coverage no longer wishes the coverage, has obtained other substantially equivalent coverage, *or fails to tender or pay the premium after reasonable demand therefor has been made.* Such liability is in addition to any other penalties applicable pursuant to law. (Emphasis supplied.)

The express exclusion from this sanction of those cases involving cancellation or lapse upon nonpayment of the premium after reasonable demand therefor is consistent with the internal provisions of those sections of the code to which the sanction is intended to apply. *See* § 240A(a) (excluding cases involving nonpayment of premium); § 240AA(a) (same); and § 240C(b)(1) (same). The legislature did not inadvertently fail to incorporate the sanction of § 240D when it repealed the notice provision of § 240AA(c–1) in favor of the notice provision in the Transportation Article. This sanction never applied to that notice provision when the reason for cancellation or nonrenewal was nonpayment of premium.

Nor does it otherwise appear that the legislature intended to attach the sanction of strict liability, or to create a tort duty, when it "transferred" the notice requirement from the insurance code to the motor vehicle code. House Bill 633, enacted as ch. 617 of the Laws of 1983, was intended to tighten enforcement of the compulsory vehicle insurance laws. Adopting many of the recommendations made by a task force of the House Economic Matters Committee which studied the problem of uninsured motorists in this State, the bill: increased the number of points to be assessed for knowingly operating or permitting the operation of an uninsured vehicle; upgraded the requirements for proof of insurance; increased the fine for owning an uninsured registered vehicle; required the MVA to verify insurance

coverage of not less than 10 percent of vehicle registrations on a random sample basis; required periodic verification of insurance claimed by those who had previously violated the laws relating to required security; and, required proof of insurance by those persons required to appear for certain administrative hearings conducted by the MVA, and by all persons who were issued safety equipment repair orders.

Although the bill preserved the requirement that insurers notify the MVA of the termination or lapse of the required insurance, it actually softened the provision somewhat by requiring that notice be given only of those terminations occurring within the first six months of issuance. The insurance task force noted that this change was for the purpose of "reducing some inefficient paperwork for both MVA and insurance companies." *Insurance Task Force Report—Uninsured Motorist,* at 3, on file with the legislative history of House Bill 633, Maryland Department of Legislative Reference. It seems clear that this notice provision was not the centerpiece of the legislative attempt to tighten enforcement of compulsory insurance laws, and thus there is no suggestion that the legislature intended the application of a strict sanction which it did not spell out. Given the legislative history of selective application of the sanction of strict liability, and the history of this particular statute, we are persuaded that no such sanction should be implied in this case.

■ Although the presence or absence of an indication of legislative intent to create a private remedy is a very important factor to be considered by a court in determining whether to recognize a tort duty or a new private right of action, it is not the only factor. *See Transamerica Mortg. Advisors, Inc. (TMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Texas & Pacific Ry. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). While more recent decisions of

the Supreme Court have indicated that implication of a private right of action "is limited solely to determining whether Congress intended to create the private right of action," *Touche Ross, supra,* 442 U.S. at 568, 99 S.Ct. at 2485, the earlier cases refer to other relevant factors. These factors include whether the plaintiff is one of the class for whose special benefit the statute was enacted, and whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088. *See generally,* Frankel, *Implied Rights of Action,* 67 Va.L.Rev. 553 (1981).

This Court has not hesitated to change the common law to permit new actions or remedies where that course was appropriate. *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 140–41, 497 A.2d 1143 (1985). However, even though we apply the more flexible approach suggested by *Cort v. Ash,* we do not find it appropriate or necessary to recognize a tort duty or a separate cause of action for strict liability in favor of the plaintiffs against Erie.

Although the Chops may properly be said to be within the class of persons in whose favor the statute was intended, it seems equally apparent that the principal focus of the uninsured motorist laws is for the general protection of the public. Additionally, while permitting recovery by the plaintiffs would not be inconsistent with the underlying purpose of the legislative scheme, we do not believe such a broad extension of existing law is necessary to properly implement the legislation. We note that the legislature has provided other remedies for those who are involved in accidents with uninsured motorists, including the requirement of uninsured motorist coverage in every automobile liability policy issued, sold, or delivered in this State, Art. 48A, § 541(c)(2), and the establishment of a fund for payment of claims arising out of accidents with uninsured motorists occurring in this State. Article 48A, § 243H(a)(3). Finally, as we have noted, the legislature did not expressly or impliedly establish the sanction sought by the plaintiffs,

even though the legislature has done so in other related matters involving insurance.

Our holding makes it unnecessary to consider whether, if a tort duty or a private cause of action were available to an individual, that right would extend as well to an insurer who seeks recovery by way of subrogation. See, however, Art. 48A, § 243H(a)(3)(v), expressly excluding subrogated insurers as qualified claimants against the Maryland Automobile Insurance Fund.

JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.