Dear Treasurer Dixon:
You have requested our opinion whether Article 95, § 22F of the Maryland Code, concerning local government investment guidelines, creates any express or implied liability for either the State Treasurer or the State. This legislation, it must be said at the outset, does not make the State Treasurer responsible in any way for particular local investments that turn out to have been imprudently risky. Any potential liability resulting from Article 95, § 22F would be linked solely to the Treasurer's regulatory and oversight role.
Your specific question is this: "Is it the opinion of the Attorney General that the creation of these new regulatory requirements concerning the promulgation of investment guidelines, the enforcement of investment policy development, and the bi-annual filing of investment activity create a new or potential liability to the State?"
Our opinion is as follows:
1. The State Treasurer enjoys public official immunity and would be immune from liability concerning the implementation and enforcement of most aspects of Article 95, § 22F, even if the statute were erroneously construed to create duties enforceable in a tort action.
2. Although certain causes of action might theoretically be framed under the Tort Claims Act for negligent actions by employees of the Treasurer's Office, in reality the risk of liability is very low, if it exists at all.
 I Background
Recent events have resulted in increased attention to local government investment practices. One fiasco, the subject of national press coverage, was the enormous financial loss suffered by Orange County, California, from its imprudent investment of taxpayers' money in derivatives. Somewhat less publicized, yet still deeply troubling, were losses suffered by Charles County, Maryland, resulting from a deputy treasurer's impermissible investment of Charles County funds in inverse floaters, collateralized mortgage obligations, and other medium-term and long-term derivatives and structured notes.[1] In light of these events, the General Assembly's Joint Committee on the Management of Public Funds (the "Joint Committee") undertook a study of local government investment practices and published its recommendations in its Report of the 1994 Interim (the "1994 Report").
The Joint Committee recommended that the State Treasurer "prepare additional measures that clearly restrict the investment of public funds in order to provide legal and practical assurance that such funds are available as needed . . . [applicable] to all public entities — State, regional, county, and municipal." 1994 Report at 43. The Joint Committee also recommended a draft "local government investment policy" bill. In explaining the need for this legislation, the Joint Committee stated:
 Whenever public funds are involved, an exceptionally high standard of care is required. The [Joint Committee] recommends that the responsible investment person for each public entity (director of finance, investment manager, treasurer, etc.) be required to submit at least quarterly the precise composition of the public entity's investment portfolio to the appropriate local government official (the mayor of Baltimore City, the mayor of any municipality or the chairman or president of its governing body in the absence of a mayor, the county executive of a charter county or president or chairman of the county council where there is a county manager system, or the president or chairman of the board of commissioners).
 Details of this portfolio must include the type, amount and maturity date of each investment and a certification to the appropriate government official of compliance with local law. The intent of this reporting requirement is to keep the appropriate local government official currently informed and to identify any violation(s) before financial damage is rendered to the public entity.
Id. The Joint Committee also suggested augmenting this local oversight by requiring certain of these investment reports to be sent to the State Treasurer: "The [Joint Committee] further recommends that the appropriate local government official receiving this report send a copy of the required quarterly investment portfolio report within 15 days of receipt to the State Treasurer, certifying to the State Treasurer the date of receipt and that this report has been reviewed for compliance with the local government's investment policy." Id.
The Joint Committee also recommended that the State Treasurer promulgate regulations to establish investment parameters for local governments:
 The [Joint Committee] further recommends that the State Treasurer, in consultation with local and regional public entities, promulgate regulatory guidelines with which all public entities must comply but under which each public entity can tailor its investments according to its particular needs. Each public entity would be required promptly to send a certified copy of its written investment policy to the State Treasurer as proof of its adoption. Any time a public entity amends its written investment policy, a certified copy of its written investment policy with the amendment(s) must promptly be sent to the State Treasurer as assurance of continued compliance.
1994 Report at 44.[2] The Joint Committee suggested that the State Treasurer also be directed to report to the Joint Committee failure by any public entity either to adopt a written investment policy, or, if required, to remit its investment portfolio report.
The Joint Committee concluded its report on the investment of public funds with the following statement:
 The foregoing disclosures require all public entities to do what they already should be doing. The local written investment policies should facilitate prudent investment decisions that public entities must make. The reporting of compliance with these requirements to the State Treasurer does not impose a perceptible burden to the local entities.
Id.
 II Legislative Requirements
The General Assembly, with changes suggested by the late Treasurer Maurer, enacted legislation substantially similar to that proposed by the Joint Committee. This legislation, enacted as Chapter 143 of the Laws of Maryland 1995 and codified at Article 95, § 22F, imposes legal requirements on three entities: "local government units," a term that includes Baltimore City, all community colleges, all counties, all municipal corporations, the Washington Suburban Sanitary Commission, and the Washington Suburban Transit Commission; the State Treasurer; and the Joint Committee. We briefly review these requirements below.
A. Local Government Unit Requirements
Article 95, § 22F(c)(2)(i) requires all local government units to adopt by resolution a local government investment policy (hereafter referred to as the "Local Policy" or the "Local Policies"). A Local Policy must be "consistent with the local government investment guidelines adopted by the State Treasurer." Article 95, § 22F(c)(2)(i)1. It must also "mee[t] the individual needs of the local government unit." § 22F(c)(2)(i)2. Once a Local Policy is adopted, it is sent to the State Treasurer. § 22F(c)(2)(ii). Changes to a Local Policy must also be sent to the Treasurer. § 22F(c)(3). A local government unit may not invest in a manner inconsistent with the Local Policy. § 22(d).
Further, for the period October 1995 through October 1999, local government units having an annual budget in excess of $1,000,000 must complete, certify, and send to the State Treasurer a semi-annual report on all investments (hereafter referred to as the "Local Reports"). § 22F(e)(2)(i). The local government's investment manager "shall certify the accuracy of the form and that the investments reported on the form are in compliance with the local investment policy . . . ." § 22F(e)(2)(ii).
B. State Treasurer Requirements
Article 95, § 22F mandates five significant duties for the State Treasurer. All of these duties can best be characterized as policy oversight or supervision; none imposes a fiduciary or other duty related to a local government's specific investment decisions.
The first duty is to "adopt by regulation local government investment guidelines to govern the investment of public funds by local government units in a manner that will facilitate sound cash management while protecting the public and assuring that a local government unit has access to its public funds as required." The guidelines are to:
 1. State the types of investments in which public funds may be invested;
 2. Include guidance for the prudent investment of public funds based on cash flow projections, income, liquidity, investment ratings, and risk;
 3. Require that investments by a board of education and a board of library trustees are in compliance with the local investment policy of the respective county; and
 4. Prohibit borrowing of funds for the express purpose of investing those funds.
Article 95, § 22F(c)(1)(i) (ii). The regulations are also to include a form to be used by those local government units that must file Local Reports. § 22F(c)(1)(iii).
The second duty is to check Local Policies for consistency with the regulatory guidelines. "If the State Treasurer determines that the local investment policy is not consistent with the local government investment guidelines adopted by the State Treasurer, the State Treasurer shall notify the local government unit and the governing body of the local government unit shall prepare and submit a revised local investment policy that is consistent with the State Treasurer's guidelines." § 22F(c)(2)(iii).
The third duty is to verify that Local Reports, which are to be submitted by local government units having an annual budget in excess of $1,000,000, are certified by local officials as complying with the Local Policy. "The State Treasurer shall review the forms to verify that the chief executive, a governing body, or an independent auditor engaged by the chief executive or a governing body has certified their compliance with this section and the local government investment guidelines." § 22(e)(4).
The fourth duty is to solicit compliance by a local government unit that fails to submit a Local Policy or a Local Report:
 The State Treasurer shall contact the local government unit to seek compliance if a local government unit fails to:
 (i) Adopt a local investment policy that is consistent with the local government investment guidelines adopted by the State Treasurer; or
 (ii) Comply with the reporting requirements under subsection (e) of this section.
§ 22F(f)(1).
The fifth and final duty is to notify those non-complying local government units and the Joint Committee of any non-compliance. § 22F(2).
C. Joint Committee Actions
The Joint Committee may request the Attorney General to seek judicial enforcement against local government units that do not comply with the statute's policy formulation or reporting requirements. Article 95, § 22F(f)(3).
 III Implementation of Article 95, § 22F
Your letter requesting this opinion states that your office proposed and adopted emergency regulations and re-proposed and adopted, with certain nonsubstantive changes, final regulations.See 22:17 Md. Reg. 1310-1313 (August 18, 1995) (emergency regulations); 23:4 Md. Reg. 274 (February 16, 1996) (final regulations). Both the emergency regulations and the final regulations contain, as required by Article 95, § 22F(c), guidance for local government units in adopting Local Policies and a form to be used by those local government units that must submit semi-annual Local Reports. In addition, your letter states that your office provided information and conducted training seminars to assist local government unit officials in complying with the requirements of Article 95, § 22F.
Finally, your letter states that your office has reported in writing to the Joint Committee those local government units that have failed to comply with the requirements of Article 95, § 22F, either through failure to submit a Local Policy or failure to submit a Local Report.[3]
 IV Liability Analysis
A. Public Official Immunity
A public official, as distinct from a State employee, "will be relieved of liability for his non-malicious acts where . . . his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties." Ashburn v. Anne Arundel County, 306 Md. 617, 622,510 A.2d 1078, 1080 (1986) (quoting James v. Prince George's County,288 Md. 315, 323, 418 A.2d 1173, 1178 (1980)) (emphasis in original). Further, "An act falls within the discretionary function of a public official if the decision which involves an exercise of his personal judgment also includes, to more than a minor degree, the manner in which the police power of the State should be utilized." James v. Prince George's County,288 Md. at 327.
The Treasurer is a public official, of course. Article VI, § 3 of the Maryland Constitution. Furthermore, all except one of the Treasurer's duties under Article 95, § 22F involve the exercise of judgment and discretion: fashioning regulations, determining whether Local Policies comply with the regulations, seeking compliance by local governments, and reporting non-compliance. Therefore, if a claim were based on the Treasurer's failure to have performed one of these duties, the Treasurer would be immune from liability.[4]
The Treasurer would not be immune on this basis if the cause of action were to be appropriately grounded in an alleged tortious failure to have performed the third duty listed in Part IIB above: verifying that certain local certifications were made. This duty can only be characterized as ministerial.
We do not mean to suggest that a violation of even a ministerial duty under this statute would necessarily create a legally cognizable "tort duty" owed to those who claim economic damage. See Erie Ins. Co. v. Chops, 322 Md. 79, 84-87,585 A.2d 232 (1991); Jacques v. First Nat'l Bank, 307 Md. 527, 534,515 A.2d 756 (1986). (In the absence of some indication of a contrary intention on the part of the Legislature, a statutory basis for a tort duty relating to economic loss ordinarily will be recognized only when there is "an intimate nexus between the parties."). In our view, there is no close nexus between the Treasurer's Office and those who might suffer economic loss from local government investment policies. Thus, a court would not read § 22F to create such a tort duty.
B. Legislative Immunity
Turning to the issue of whether liability could exist for alleged defects in regulations issued under § 22F, we note that the common law doctrine of legislative immunity provides executive agencies and officials with absolute immunity from civil liability in cases arising from the exercise (or failure to exercise) legislative functions. See Mandel v. O'Hara, 320 Md. 103,576 A.2d 766 (1990). In Mandel, the Court of Appeals held that former Governor Mandel had absolute immunity in a lawsuit arising from his exercise of the veto power, a legislative function.320 Md. at 134.
In our opinion, the legislative immunity doctrine recognized in Mandel applies with equal force to the quasi-legislative function of promulgating regulations.[5] In fact, the Court of Appeals all but held that agencies that promulgate regulations are entitled to absolute immunity, for the Court gave tacit approval to the approach taken in Jayvee Brand, Inc. v. UnitedStates, 721 F.2d 385, 390 (D.C. Cir. 1983) (United States could not be held vicariously liable under the Federal Tort Claims Act for agency officials' quasi-legislative action of promulgating regulations). See Mandel, 320 Md. at 131-32. See also LakeCountry Estates, Inc. v. Tahoe Regional Planning Agency,440 U.S. 391, 402-06 (1979) (interstate planning agency held to have absolute legislative immunity from civil liability in suit arising from its members' adoption of land use regulations and general plan); C.P. Chemical Co., Inc. v. United States, 810 F.2d 34,36-38 (2d Cir. 1987) (United States could not be held vicariously liable under the Federal Tort Claims Act for agency officials' quasi-legislative function of promulgating regulations); AllstateIns. Co. v. Metropolitan Sewerage Comm'n, 258 N.W.2d 148, 150, 151
(Wis. 1977) (governmental bodies charged with negligence in approving plan for construction of sewage system and in failing to promulgate rules and regulations requiring safe and proper operation and use of sewage system exercise quasi-legislative function and are absolutely immune from liability under the doctrine of legislative immunity).
In that the promulgation of the regulations envisioned by the statute is a quasi-legislative function, a tort claim alleging a defect in the regulations would not survive a motion to dismiss.
C. Individual Immunity
Both the Treasurer and the employees of the Treasurer's Office are "State personnel." § 12-101(1) of the State Government ("SG") Article, Maryland Code. As "State personnel," they are given the following grant of immunity:
 State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.
§ 5-399.2(b) of the Courts and Judicial Proceedings Article. See
SG § 12-105.
Thus, even if the ministerial action or omission of the State Treasurer or any action or omission of a State employee amounted to negligence, immunity would still protect against individual liability (assuming no malice or gross negligence).
D. Vicarious Liability of the State
Under the Maryland Tort Claims Act ("MTCA"), the State has (within limits) waived sovereign immunity in tort. SG § 12-104. In doing so, the State has exposed itself to vicarious liability for the torts of its employees. See, e.g., State v. Card,104 Md. App. 439, 447, 656 A.2d 400, cert. denied, 339 Md. 643 (1995).
One can conceive of a tort claim alleging, for example, that an official or employee of the Treasurer's Office negligently failed to identify an inconsistency between a Local Policy and the regulations, negligently failed to verify that a Local Report was filed and certified, negligently failed to seek compliance, or negligently failed to notify the local government and the Joint Committee of continued noncompliance. Assuming it were possible for such violations to give rise to a "tort duty," see Erie Ins.Co. v. Chops, 322 Md. at 84, we discern no basis on which a motion to dismiss would be granted on the basis of absolute immunity.
On the other hand, in order to prevail a plaintiff would have to prove, among other things, not only that the negligence occurred but also that it was the proximate cause of the plaintiff's loss. Given the limited role of the Treasurer's Office and the fact that investment decisions continue to be made at the local level, we discern little, if any, risk that such a claim could succeed.
 V Conclusion
In summary, it is our opinion that:
1. The State Treasurer enjoys public official immunity and would be immune from liability concerning the implementation and enforcement of most aspects of Article 95, § 22F, even if the statute were erroneously construed to create duties enforceable in a tort action.
2. Although certain causes of action might theoretically be framed under the Tort Claims Act for negligent actions by employees of the Treasurer's Office, in reality the risk of liability is very low, if it exists at all.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Elizabeth S. Roese Assistant Attorney General
 Pamila J. Brown Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] Under Article 95, § 22(a), a county may invest in the following: obligations or repurchase agreements in accordance with § 6-222 of the State Finance and Procurement ("SFP") Article; interest-bearing deposits in any bank in the State of Maryland, any savings and loan, or any building and loan; and the local government investment pool created in Article 95, § 22G of the Maryland Code. SFP § 6-222 did not authorize investments in inverse floaters, collateralized mortgage obligations, or other medium- or long-term derivatives or structured notes. Nevertheless:
 From early 1992 through June 1994, the former Deputy Treasurer of Charles County invested more than $33 million of the county's funds in a variety of medium- and long-term derivative and similar securities and structured notes . . . At the time these illegal investments were discovered by the County Commissioners in early July 1994, initial estimates indicated a loss of about $2.8 million . . . . The County is seeking to recover the balance of its losses, now estimated to exceed $7.2 million, from the remaining five defendants in the litigation.
Joint Committee on Public Funds, Report of the 1994 Interim 43.
[2] As to the content of these "regulatory guidelines," the Joint Committee wrote:
 The Treasurer's guidelines would restrict investments to the types of investments in which public monies may be invested, and provide criteria, parameters and guidelines for their prudent investment, including:
— Safety of principal;
— Liquidity;
— Income;
 — Cash flow projections that match maturities to cash needs to the degree reasonable; and
 — Ratings of the highest "investment grade" by at least one nationally recognized statistical rating organization.
Id.
[3] "As of December 7, 1995, all counties and Baltimore City had adopted [Local Policies] accepted by the State Treasurer except for one county, which the State Treasurer resubmitted for proper completion. Four municipalities have adopted [Local Policies] accepted by the State Treasurer, 35 have been resubmitted for proper completion, and 39 simply have not responded. Both the Washington Suburban Sanitary Commission and the Washington Suburban Transit Commission have adopted [Local Policies] accepted by the State Treasurer. Of the 17 community colleges affected by this legislation, only one [Local Policy] was resubmitted for proper completion." Joint Committee on the Management of Public Funds, Report of the 1995 Interim 20-21.
[4] Public official immunity does not extend to the State itself. See, e.g., Boyer v. State, 323 Md. 558, 582-83,594 A.2d 121 (1991).
[5] The promulgation of regulations is a quasi-legislative function. See Maryland Board v. Armacost, 286 Md. 353, 355-56,407 A.2d 1148, 1150 (1979) (When the Maryland Board of Registration for Professional Engineers and Land Surveyors "makes rules and adopts a code of ethics governing the practice of engineering and land surveying . . ., it performs quasi-legislative functions.").
 *Page 253