554 A.2d 434

**SUGARLOAF CITIZENS ASSOCIATION, INC., et al.**

v.

**Michael GUDIS, et al.**

**No. 986, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 6, 1989.

Ralph Gordon (Gordon & Simmons, on the brief), Frederick, for appellants.

Marc P. Hansen, S. Asst. Co. Atty. (Clyde H. Sorrell, Co. Atty. and Daniel P. Rigternik, Asst. Co. Atty., on the brief), Rockville, for appellees.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

ALPERT, Judge.

We are called upon to decide whether a vote cast in alleged breach of the Montgomery County Ethics Code can cause the abrogation of legislation which was the subject of that controversial vote. The Sugarloaf Citizens Association, Lynn Lipp, and Beverly Thomas (hereinafter referred to collectively as "Sugarloaf"), appellants, filed an amended complaint against the County Council of Montgomery County and Michael Gudis, an individual county council member, in the Circuit Court for Montgomery County. This case is before us as a result of an order by the circuit court granting appellee's motion to dismiss the amended complaint. We affirm, although we do not reach the substantive issues decided by the lower court.

## FACTS

Sugarloaf's complaint alleges that Montgomery County Council Resolution 11–382, promulgated to implement an earlier vote to site a resource recovery facility (RRF) near Potomac Electric Power Company ("PEPCO") property at Dickerson in Montgomery County, should be rendered void under section 19A–22(b) of the Montgomery County Code. According to Sugarloaf, the preliminary vote in the County Council to choose between two possible sites for the facility resulted in a 4–3 vote in favor of the Dickerson site. Gudis, who voted in favor of the Dickerson site, owns stock in

PEPCO. Sugarloaf contends that such a siting decision will result in the county's purchase or lease of PEPCO property, as well as require the use of PEPCO railroad facilities and electrical power generated by PEPCO. Sugarloaf argues that Gudis' vote violated section 19A–7 of the Montgomery County Code because of a conflict of interest between Gudis' stock ownership of PEPCO and his position as a county councilmember.

The appellees launched a multi-faceted attack on Sugarloaf's complaint, alleging that Sugarloaf had no standing to sue under section 19A–22(b), that Gudis voted pursuant to a valid waiver under section 19A–6, that Sugarloaf had not exhausted its administrative remedies, and that Gudis' vote, even if invalid, had no effect on the adoption of the challenged resolution. The circuit court granted the County Council's motion to dismiss the complaint on the basis that the waiver issued by the Montgomery County Ethics Commission was valid. On appeal, appellees further argue that the appeal should be dismissed because the point is now moot.

## MOOTNESS

█ Appellees argue that Sugarloaf's appeal should be dismissed pursuant to Maryland Rule 8–602(a)(10) because the County Council subsequently voted 5–2 to approve a notice of intent to proceed with construction forwarded to it by the Northeast Maryland Waste Disposal Authority (NEA). The thrust of appellees' argument is that the 5–2 vote reaffirmed Council Resolution 11–382, and because "Gudis' vote is clearly no longer necessary to support the Council's decision to site the RRF at Dickerson," the issue is moot.

Without examining the validity of appellees' premise that an individual's vote rendered invalid due to a conflict of interest will not void the action taken unless that person's vote was a necessary ingredient to the majority vote to take such action, *see Murach v. Planning & Zoning Comm'n*, 196 Conn. 192, 491 A.2d 1058 (1985); *Waikiki Resort Hotel*

*v. City of Honolulu,* 63 Haw. 222, 624 P.2d 1353 (1981); *Anderson v. City of Parsons,* 209 Kan. 337, 496 P.2d 1333 (1972); *Singewald v. Minneapolis Gas Co.,* 274 Minn. 556, 142 N.W.2d 739 (1966), we hold that the issue has not been rendered moot.

A moot question has been defined as one where "there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *City of College Park v. Cotter,* 309 Md. 573, 580, 525 A.2d 1059 (1987); *Attorney General v. Anne Arundel County School Bus Contractors Ass'n,* 286 Md. 324, 327, 407 A.2d 749 (1979). The primary flaw in appellees' reasoning is their failure to consider that the vote on the notice of intent to begin building would be rendered a nullity if this court were to rule in Sugarloaf's favor as to the validity of Resolution 11–382. The Council's notice of intent vote to allow NEA to proceed with construction at Dickerson is wholly dependent on the vote siting the proposed RRF at Dickerson and the subsequent resolution. Further, the purposes of the two votes are different. Unlike the siting vote, the notice of intent vote was not intended to determine or redetermine siting for the resource recovery facility. The vote was merely a necessary subsequent procedural step towards implementation of the Council's plan pursuant to Resolution 11–382 to build an RRF at Dickerson.[1] We will not presume that the Council would

---

1. Section 3–920 of the Natural Resources Article of the Maryland Code requires that the NEA provide a notice of intent to the County Council for its approval prior to actual construction. At this point in the process, the County Council could only prevent construction where:

    [I]t has found that, after a public hearing which has been advertised in a newspaper of general circulation in the affected county at least 14 days prior to such hearing and after considering the recommendations of the chief executive officer of the county and such other facts as it deemed relevant and material, such acquisition, construction, leasing, installation, or extension would be contrary to the best interests of the residents of such county because it would be contrary to the health, safety and welfare of the citizens of such county by reason of (i) the impact of such project on the environment, or (ii) a conflict of such project with the master plan of the

subsequently proceed in the same manner and reach the same conclusions by the same vote if we were to declare the siting vote and, consequently, Resolution 11–382, void. *See Hayman v. St. Martin's Evangelical Lutheran Church,* 227 Md. 338, 343, 176 A.2d 772 (1962). Therefore, Sugarloaf's contentions are clearly not rendered moot by the subsequent notice of intent vote.

### Standing

■ Examining Sugarloaf's complaint, it is clear to us that the genesis for its cause of action is the Montgomery County Ethics Law.[2] In its complaint, Sugarloaf cites to section 19A–1–2(b) as its authority in seeking to have the siting vote and Resolution 11–382 (in part incorporating the siting vote) rendered void because of the alleged conflict of interest.

The current Montgomery County Public Ethics Law was enacted in 1983 pursuant to chapter 513 of the Maryland Public Ethics Law, which required the local counties to adopt "similar" conflict of interest provisions. *See* Md.Ann. Code art. 40A, § 6–101(a), (b) (1986). The provision upon

---

county, or (iii) such other facts concerning such project or effects of such project as such legislative body shall find would have an adverse effect on such health, safety and welfare. (1980, ch. 871).

**2.** In this amended complaint, appellants state that "[t]he plaintiffs herein are acting in the best interests of the public and the citizens of Montgomery County ... by seeking the remedy provided by Section 19A–22(b)." Extensive quotation is taken from the Montgomery County Public Ethics Law and set forth in the complaint. The sole relief requested, other than a general request for "such other and further relief as the Court deems just and proper," is to void the action taken by the Council, consistent with the remedy provided by Section 19A–22(b).

In their reply brief, appellants now state that the basis for their complaint was their common law right as taxpayers to "challenge legislative action that is procedurally or otherwise defective." This argument belies the clear language of appellant's amended complaint. The violation complained of and the relief requested are found within the ethics law provisions. Assuming arguendo that appellants *may* have otherwise possessed standing to invalidate alleged legislative action, their standing, as evidenced by their amended complaint, is based upon the Montgomery County Public Ethics Law.

which Sugarloaf's standing for the present suit rests is
§ 19A–22. In pertinent part, § 19A–22 provides:

**Petition for injunctive or other relief; cease and desist orders; voiding official actions.**

(a) Upon direction by the commission or at the initiative of the county attorney, the county attorney may file a petition for injunction or any other appropriate relief in the circuit court for Montgomery County, or in any other court having proper venue, for the purpose of requiring compliance with the provisions of this chapter.

(b) *In addition, the court* may issue an order to cease and desist from the violation, and *can void an official action taken by an official or employee with a conflict of interest* prohibited by this chapter when the action arose from or concerned the subject matter of the conflict and the legal action was brought within ninety (90) days of the occurrence of the official action, if the court deems voiding the action to be in the best of interest of the public.

*Id.,* § 19A–22(a), (b) (emphasis added). Subsection (a) provides that the county attorney may file a petition for injunctive relief. Subsection (b) sets forth the remedies available to the court in addition to granting an injunction; one possible remedy is voiding the "official action taken." Neither subsection expressly provides for a private cause of action.

The question then becomes whether the Montgomery County Public Ethics Law, specifically § 19A–22(b), gives rise to an implied right of private action. Although our examination of Maryland case law reveals a dearth of concrete analysis in this regard, the issue has repeatedly arisen in the Supreme Court under various federal statutes. The primary focus in resolving such a question is the legislative intent. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535–36, 104 S.Ct. 831, 838, 78 L.Ed.2d 645; *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,*

453 U.S. 1, 13, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). In determining legislative intent, various factors are examined:

> including the legislative history and purposes of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies to serve the legislative purpose, and the traditional role of the states in affording the relief claimed.[3]

*Daily Income Fund, Inc., supra,* 464 U.S. at 536, 104 S.Ct. at 838. We set out to examine these factors to ascertain the legislative intent behind § 19A–22(b).

### Legislative History

As may be expected, the legislative history behind this county enactment is sketchy. Our examination reveals that the only discussion of whether the ethics law should contain a private cause of action came up in the context of § 19A–24. (Legislative Session, 7–2–82, p. 4010–11). That section provides that a county taxpayer may initiate an action on behalf of the county to recover the value of anything received by a person for violating the county ethics laws, provided that written demand is made to the county and it fails to initiate suit within sixty days thereafter. The remainder of the legislative history is silent in regard to implied private rights of action.

Where the legislative history does not indicate any discussion whatsoever as to whether a statute gives rise to such a right, the fact that the ordinance is silent would weigh heavily against an intent by the council to create a private cause of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), where the court held:

> [T]he legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17(a). At least in such a case as this, the inquiry ends there: The

---

**3.** This last factor is only relevant where federal legislation is being examined.

question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative.

Given the vast differences in legislative record-keeping between Congress and a municipal or local government, we hesitate to place such great weight on the fact that the legislative history available to us is silent as to whether the Montgomery County Council intended to create an implied private right of action. Thus, we examine the remaining factors.

*Purpose*

The pertinent provisions of the Montgomery County Ethics Law are:

**Sec. 19A–2. Legislative findings and statement of policy.**

(a) The county council of Montgomery County, recognizing that our system of representative government is dependent in part upon the people maintaining the highest trust in their public officials and employees, finds and declares that the people have a right to be assured that the impartiality and independent judgment of public officials and employees will be maintained.

(b) It is evident that this confidence and trust is eroded when the conduct of the business of Montgomery County is subject to improper influence and even the appearance of improper influence.

(c) For the purpose of guarding against improper influence, the county council enacts this public ethics law to require public officials and employees to disclose their financial affairs and to set minimum standards for the conduct of county business.

Montgomery County, Md., Code § 19A–2(a)–(c). It is plain that the policy behind the Ethics Law is to maintain the trust of the people, as a whole, in their public officials and employees by guarding against improper influence. The statutory scheme was not designed to protect any subgroup of the public, or to preserve or create individual

rights. The Court of Appeals of Maryland has distinguished between such statutes and those that "were designed only to confer a general benefit on the public at large," *see Widgeon v. Eastern Shore Hosp. Center,* 300 Md. 520, 536, 479 A.2d 921 (1984) (referring to prior cases regarding local safety ordinances), when determining whether direct private action is appropriate under a given statute. A statute regulating the ethical conduct of public employees is clearly one of the latter types, enacted for the purpose of protecting society as a whole.

## Express Statutory Remedies

The county ethics law provides for criminal penalties, § 19A–23 (incorporating § 1–19), administrative punishment, § 19A–25, and allows the county attorney to petition for injunctive relief. § 19–22(a). In addition, it authorizes taxpayer suits, under limited circumstances, to recover the value of anything received in violation of said laws. § 19A–24. In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Supreme Court examined a similar statutory scheme regulating the "investment advisors industry." The law contained similar express remedies; however, appellants there argued that an implied private cause of action existed under the statute. The court stated:

> Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States,* 278 U.S. 282, 289 [49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)]. *See Amtrak,* 414 U.S. at 458 [94 S.Ct. at 693]; *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 419 [95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975)]; *T.I.M.E., Inc. v. United States,* 359 U.S. 464, 471 [79 S.Ct. 904, 908, 3 L.Ed.2d 952 (1959)]. Congress expressly provided both judicial and administrative means for enforcing compliance with § 206. First,

under § 217, 15 U.S.C. § 80b–17, willful violations of the Act are criminal offenses, punishable by fine or imprisonment, or both. Second, § 209 authorizes the Commission to bring civil actions in federal courts to enjoin compliance with the Act, including, of course, § 206. Third, the Commission is authorized by § 203 to impose various administrative sanctions on persons who violate the Act, including § 206. In view of these express provisions for enforcing the duties imposed by § 206, it is highly improbable that "Congress absentmindedly forgot to mention an intended private action." *Cannon v. University of Chicago,* [441 U.S. 677,] 742 [99 S.Ct. 1946, 1981, 60 L.Ed.2d 560] [ (1979) ] (Powell, J., dissenting).

*Id.* at 19–20, 100 S.Ct. at 247. *See also National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.")

An examination of the above factors does not evidence any intent on behalf of the Montgomery County Council to allow a private cause of action under § 19A–22(b) to abrogate actions taken in violation of the County Ethics Law. We hold that no private right of action, implied or otherwise, exists under section 19A–22(b) of the Montgomery County Code.[4]

In their reply brief, appellants maintain that they possess standing to challenge Resolution 11–382 as taxpayers at common law.

---

**4.** At common law a taxpayer had standing to bring a declaratory judgment action for a judicial declaration that a statute was void due to a conflict of interest by one voting for its enactment. *See Beshore v. Town of Bel Air,* 237 Md. 398, 206 A.2d 678 (1965). We need not decide whether the statute pre-empts any common law remedy that appellants may have possessed to attack Resolution 11–382. Appellants do not seek declaratory relief; they rely on the mechanism provided within § 19A–22(b) to render the resolution void. *See Ibid., supra,* n. 2.

■ Assuming, arguendo, appellants possess common law standing as a taxpayer to abrogate Resolution 11–382, and even if such a common law action was not preempted by the county ethics law, appellants' disregard for the primary jurisdiction doctrine presents an alternative basis for affirming the trial court's order dismissing appellants' cause of action. Under the primary jurisdiction doctrine, a court should defer exercise of its concurrent jurisdiction until the Montgomery County Public Ethics Commission could hear, investigate, and render a decision on the same subject matter. As stated in *Maryland–Nat'l Cap. Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 601, 386 A.2d 1216 (1978), the primary jurisdiction doctrine "comes into play when a court and agency have concurrent jurisdiction over the same matter and there is no statutory provision to coordinate the work of the court with that of the agency." *See also Sweeney v. Hartz Mountain,* 78 Md.App. 79, 552 A.2d 912 (1989).

The county ethics law created the Montgomery County Ethics Commission, *see* § 19A–5(a), which is empowered to issue advisory opinions to persons subject to the laws' application, *id.,* § 19A–5(d), hear and decide complaints of alleged violations of the ethics laws, *id.,* § 19A–5(e), to investigate any complaint, issue subpoenas, and swear witnesses, *id.,* grant waivers from the application of the ethics laws, *id.,* § 19A–6(a), and take action to enforce the ethics laws of the county. *Id.* § 19A–5(e). The Ethics Commission was created specifically to administer the county ethics law, to determine if the law is being violated, and to promulgate rules to effectuate its purposes. As we stated in *McLean Contracting Co. v. Maryland Transp. Auth.,* 70 Md.App. 514, 522, 521 A.2d 1251 (1987):

> The "principal reason" behind this doctrine is the recognition that the work of agencies and courts must be sensibly coordinated. Davis, *Administrative Law Text,* Ch. 19.01 at 374 (3rd ed., 1972). Therefore, courts generally will refuse to act on matters within an agency's particular expertise without the benefit of the agency's opinion.

Therefore, we hold that the Montgomery County Ethics Commission has primary jurisdiction to hear and investigate complaints of violations of the Montgomery County's Public Ethics Law.

Appellants proffer two arguments in regard to the requirement that they file a complaint with the Ethics Commission.[5] First, they argue that filing a complaint with the Ethics Commission would have been futile because the Commission had already given Gudis a waiver to vote. We disagree. Because such a procedure is very informal and perfunctory, and because the Commission necessarily bases its decision on information supplied for the most part by the petitioner, appellants cannot rely on the waiver decision to foreshadow the way the Commission would handle their complaint, especially where new information from sources other than the petitioning councilman could have been provided. As an example, appellants allege that siting a "mass-burn facility" at Dickerson—the ultimate result of the Council's vote—was not an alternative contemplated by the Commission when it issued the waiver.

Alternatively, appellants argue that a complaint was filed with the Commission by way of a letter to Gudis requesting that he withdraw his vote. Gudis then forwarded the letter to the Commission. For a proper consideration of appellants' contentions by the Commission, appellants were required to "file with the commission a complaint alleging a violation of any of the provision of this chapter. These complaints shall be written and under oath...." § 19A–5(e). By not acting on the allegations in the letter, the Commission did not treat it as the filing of a complaint. Appellants cannot rely on the fact that the unsworn letter they sent to Gudis was subsequently forwarded to the Commission.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.

---

5. Neither party presented argument regarding the primary jurisdiction doctrine. Appellants' arguments were made in the context of the exhaustion of administrative remedies doctrine; however, we will address the arguments as if they had been properly focused.