*Marcella Holloman v. Marilyn Mosby*, No. 1976, September Term, 2019. Opinion by Nazarian, J.

**COURTS AND JUDICIAL PROCEEDINGS – GRAND JURY INVESTIGATION – PRIVATE RIGHT OF ACTION**

Section 8-417(b) of the Courts and Judicial Proceedings Article of the Maryland Code ("CJ") does not create a private right of action for a citizen of Baltimore City to compel a judge to approach a grand jury.

**GRAND JURY INVESTIGATION – COMMON LAW – RIGHT TO APPROACH GRAND JURY**

Grand juries serve a vital role within Maryland's criminal justice system. As the system is presently structured, the State's Attorney has broad discretion when determining which criminal actions to prosecute. A check on that discretion is the grand jury's power to investigate matters not presented by the State's Attorney's office. Consistent with *Brack v. Wells* and *Sibley v. Doe*, a private citizen has the right to ask the grand jury whether it will conduct an investigation into criminal allegations. This right is not limitless, though. The citizen must first exhaust all other possible remedies, and is not entitled to present evidence to the grand jury personally, but they can compile the documents they wish presented to and considered by the grand jury.

Circuit Court for Baltimore City
Case No. 24-C-13005128

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1976

September Term, 2019

_____

MARCELLA HOLLOMAN

v.

MARILYN MOSBY

_____

Fader, C.J.,
Nazarian,
Shaw Geter,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: October 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Marcella Holloman's son, Maurice Donald Johnson, was shot and killed by police at their home in May 2012. Ever since, she has sought to have the shooting investigated and charges brought against the involved officers. After the State's Attorney declined to bring charges, Ms. Holloman filed a petition for a writ of mandamus in the Circuit Court for Baltimore City that sought a grand jury investigation into the shooting. After several court filings, documents contained in the court file were forwarded to the Baltimore City grand jury, which declined to indict. A later motion for relief and to present additional materials to the grand jury was denied as moot.

Ms. Holloman points to two different sources of law that, she says, entitle her to present her case to a grand jury. The *first* is Section 8-417(b) of the Courts and Judicial Proceedings Article of the Maryland Code ("CJ"), which states that "[i]n addition to any other duty imposed by law, each grand jury shall carry out an investigation if a judge of the [Baltimore City] circuit court directs." The *second* is a common law right to seek permission to appear before a grand jury. We hold that CJ § 8-417 does not create a private right of action through which Ms. Holloman can compel a circuit court judge to direct the grand jury to conduct an investigation, but that she does have a right at common law, *see Brack v. Wells*, 184 Md. 86 (1944); *Sibley v. Doe*, 227 Md. App. 645 (2016), to forward information to the grand jury, albeit not a right to appear before the grand jury in person. We reverse and remand with directions that the circuit court allow Ms. Holloman to compile materials she wishes to submit and to forward those materials to the grand jury.

# I. BACKGROUND

## A. The Incident

On May 19, 2012, at 5:00 p.m., Mr. Johnson arrived at Ms. Holloman's home. He was visibly upset, and she wasn't sure why, and she wanted to take him to the hospital to get help. But he refused and went to the back of the house. Approximately five minutes later, Ms. Holloman called 911 to ask for assistance in getting Mr. Johnson transported to the hospital. Officer Paul Markowski responded at 5:16 p.m., ten minutes after the 911 call had been made. By that time, the situation had deescalated, and Mr. Johnson was in the backyard.

When Officer Markowski arrived, he entered the home through the front door. Ms. Holloman asked him to stay by the front door and wait for backup to arrive because Mr. Johnson had calmed down. Officer Markowski continued on—he looked around, walked through the house to the back door, and released the strap of his firearm holster along the way. Once at the back door, Officer Markowski called Mr. Johnson's name, and Mr. Johnson began banging on the back door.

Officer Gregory Bragg arrived and made his way to the back of the house as well. Officers Bragg and Markowski looked at each other, then unlocked and opened the door to the back yard. The officers each grabbed one of Mr. Johnson's arms, but Mr. Johnson was able to break free. A struggle between Officer Markowski and Mr. Johnson ensued and both men fell to the floor. Mr. Johnson got on top of Officer Markowski and Officer Markowski reached for his service weapon. Officer Markowski discharged his weapon at point blank range twice into Mr. Johnson's chest. Officer Bragg discharged his weapon

2

into Mr. Johnson's back. Mr. Johnson took his last breath at 5:18 p.m., two minutes after Officer Markowski had arrived.

The police report states that Officer Bragg thought Mr. Johnson was reaching to take Officer Markowski's service weapon, and that that was the reason he discharged his weapon into Mr. Johnson's back. Ms. Holloman disputes this. She also contends that Officer Markowski was aware of Mr. Johnson's mental illness diagnosis because of prior incidents and that Mr. Johnson's diagnosis was contained in a Maryland database of persons known to have mental health diagnoses.

### B. Procedure

Soon after the death of her son, Ms. Holloman sought to have the officers' conduct investigated. In a letter dated September 21, 2012, the Office of the State's Attorney for Baltimore City advised Ms. Holloman that the office had "reviewed the investigation into the death of your son Maurice Donald Johnson," that the office's review "supports the finding that Officer Gregory Bragg was acting reasonably in self-defense of himself and others when he shot your son," and "[t]herefore no criminal charges will be brought against Officer Bragg for his actions."

On August 14, 2013, Ms. Holloman filed a petition for a writ of mandamus seeking an order directing an independent investigation by a grand jury into the events of May 19, 2012. After the State's Attorney didn't respond, Ms. Holloman filed a motion for default judgment or, in the alternative, to impose sanctions against the State's Attorney and the police officers who responded to Ms. Holloman's 911 call. The court denied the motion for default judgment on October 16, 2013.

After receiving a Notice of Contemplated Dismissal from the circuit court, Ms. Holloman filed on April 29, 2015 a response that detailed her efforts to compel an investigation of her son's death. On August 22, 2015, Ms. Holloman also wrote to Judge W. Michel Pierson, the Administrative Judge of the Circuit Court for Baltimore City, and asked to approach the grand jury. The court issued an order deferring dismissal of the action pursuant to Maryland Rule 2-507(c) until April 8, 2016.[1]

Ms. Holloman filed an amended petition for a writ of mandamus on September 16, 2015. This time, she sought authorization to approach the grand jury so she could ask directly for it to commence an investigation. On September 28, 2015, Ms. Holloman wrote a letter to Chief Judge Mary Ellen Barbera of the Court of Appeals of Maryland requesting the same relief.

On October 14, 2015, the Attorney General of Maryland filed a motion for summary judgment asking that the State's Attorney "be granted summary judgment in the form of a declaratory judgment that [Ms. Holloman] may only communicate to the grand jury her wish to present allegations to the grand jury, but only after requesting that both this Court and the State's Attorney present the allegations to the grand jury." Ms. Holloman filed a timely opposition. The court granted the motion for summary judgment on November 20, 2015, and stated in its order that Ms. Holloman must first ask the State's Attorney and the court to present information to the grand jury before communicating with the grand jury.

---

[1] Maryland Rule 2-507(c) states in part that "[a]n action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry."

Ms. Holloman did so, and the State's Attorney's Office—indeed, the same Assistant State's Attorney—sent her a new letter on December 7, 2015 that reiterated its 2012 decision not to pursue charges and declining to bring the matter to the grand jury:

> Please be advised that our 2012 finding that Office[r] Gregory Bragg was acting reasonably in self-defense when he shot your son has not changed. Therefore this office has no intention of presenting this matter to the Grand Jury of Baltimore City.

On August 18, 2016, Ms. Holloman filed a Notice of Compliance with the Court's Order and asked for permission to access the grand jury. The court issued a memorandum to the grand jury judge on November 23, 2016 requesting that the matter be brought to the attention of the grand jury. In a letter dated December 8, 2016, the grand jury judge wrote to Ms. Holloman stating that her request to approach the grand jury has been submitted and that the grand jury had declined to commence an investigation.

Nearly two years later, on November 28, 2018, Ms. Holloman filed a Motion for Disclosure of Materials Submitted to the Grand Jury. As the title suggests, Ms. Holloman asked the court to issue an order providing her access to all materials or evidence that had been submitted to the grand jury between November 23, 2016 and December 8, 2016. The Office of the State's Attorney responded that "[n]o materials were submitted to the grand jury," and thus there was nothing to disclose.

On June 12, 2019, Ms. Holloman filed a Motion for Relief and to Present to the Grand Jury. On October 30, 2019, the court issued an order stating that on September 25, 2019, the grand jury had been provided with copies of the court file and that on October 15, 2019, the grand jury had informed the court that it declined to conduct an investigation.

5

As a result, the court denied Ms. Holloman's motion for relief and to present to the grand jury as moot.

Ms. Holloman noted this timely appeal. We supply additional facts as necessary below.

## II.    DISCUSSION

On appeal, Ms. Hollman seeks, in two different ways, to compel further investigation of her son's death by the Baltimore City grand jury.[2] *First*, she argues that the circuit court erred by not ordering the grand jury itself, pursuant to CJ § 8-417, to investigate Ms. Holloman's allegations against the officers. *Second*, she contends that the circuit court erred by not allowing her to present her request for investigation to the grand jury foreperson personally. The State responds that her requests for these forms of relief were not preserved and that her motion for additional relief was denied properly as moot.

The facts surrounding Mr. Johnson's death are disputed in important ways, but the

---

[2] Ms. Holloman phrases her questions presented as follows:

1. Did the circuit court err or abuse its discretion by not directing the grand jury to investigate the police's killing of Maurice Johnson?

    A. Did the circuit court abuse its discretion by not recognizing its statutory authority to direct the grand jury to investigate, and not exercising its discretion to determine whether to do so?

    B. Did the circuit court abuse its discretion by not directing the grand jury to investigate, based on the facts presented by Ms. Holloman?

2. Did the circuit court err by not allowing Ms. Holloman to present her request for investigation personally to the grand jury foreman?

facts relating to Ms. Holloman's rights to seek grand jury relief aren't, and her arguments on appeal are purely legal questions that we review *de novo*. *Sibley*, 227 Md. App. at 653–54.

### A. Preservation and Mootness

Before getting to the merits, though, we must address the State's contentions that (a) Ms. Holloman hasn't preserved her request that we instruct the circuit court to direct a grand jury investigation (the State doesn't dispute that she preserved her request to present her case to the grand jury directly), and (b) in any event, the case is moot because she has already received the relief to which she could be entitled if she won. Ms. Holloman responds that she did ask the circuit court to direct the grand jury to commence an investigation, and that although the circuit court forwarded to the grand jury her motion for relief as well as the case file, the case isn't moot because the court didn't direct the grand jury to conduct an investigation or allow her to address the grand jury herself. We find Ms. Holloman's claims preserved and not moot.

*First*, the State's preservation argument focuses entirely on the last of Ms. Holloman's motions, her Motion for Relief and to Present to Grand Jury. And it's true that in that specific filing, she asked the court to issue an order providing her an "opportunity to present her matter to the Grand Jury either in person or through submission of reasonable papers for consideration by the Grand Jury." But in addition to including a general "any other relief deemed appropriate by this Honorable Court" prayer in the motion, Ms. Holloman previously had asked the circuit court to direct the grand jury to commence an investigation pursuant to CJ § 8-417, and the court had denied that relief.

7

Her original petition for a writ of mandamus requested an independent investigation by the grand jury specifically. Her requests evolved in subsequent filings—her amended petition for a writ of mandamus asked the court to authorize her to approach the grand jury to present her allegations for an investigation to commence, and her motion for relief and to present to the grand jury asked the court to provide her an opportunity to present her matter to the grand jury either in person or through reasonable papers or any other relief deemed appropriate by the court. But although her last filing didn't request a court-directed grand jury investigation, she did cite CJ § 8-417 ("each grand jury shall carry out an investigation if a judge of the circuit court directs").

"Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Maryland Rule 8-131(a). This anti-sandbagging provision preserves "[t]he interests of fairness [] by 'requir[ing] counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.'" *State v. Bell*, 334 Md. 178, 189 (1994) (*quoting Clayman v. Prince George's Cnty.*, 266 Md. 409, 416 (1972)). On appeal, Ms. Holloman asks us to reverse the circuit court's denial of her motion for relief and to remand with instructions to direct the grand jury to investigate under CJ § 8-417, to exercise its discretion to order such an investigation under that statute, or to allow Ms. Holloman to present her case to the grand jury. And all along, she has sought to compel a grand jury investigation into her son's death, either by having the court order one or

8

allowing her to approach the grand jury herself. She appealed when the circuit court granted the State's summary judgment motion, but that appeal was dismissed as moot, and the State isn't claiming that she waived this argument, only that it wasn't in the motion for relief. We are comfortable that her request for a court-ordered grand jury investigation was before the circuit court and that her appellate claim that the court erred in declining to order one is preserved adequately.

*Second,* the State asserts that Ms. Holloman's appeal is moot because she has already been awarded all of the relief to which she could be entitled. Ms. Holloman counters that neither the court's order nor the State's brief addressed the relief she requested under CJ § 8-417 that the court should direct the grand jury to investigate, and that she is entitled as well to present her case to the grand jury directly. To answer this question in the State's favor, we would effectively need to decide the merits in the State's favor—put differently, the only way she could have received all of the relief to which she's entitled is if we find that she isn't entitled to anything further. The fact that that question remains means that this appeal isn't moot.

"It is well settled that '[t]he duty of this [C]ourt, as of every other judicial tribunal, is to decide actual controversies . . . ." *Menefee v. State*, 417 Md. 740, 748 (2011) (*quoting Thom v. Cook*, 113 Md. 85, 88 (1910)). Actual controversies exist when a judgment "can be carried into effect." *Thom*, 113 Md. at 88 (*quoting Mills v. Green*, 159 U.S. 651, 653 (1895)). It is not our duty to give opinions regarding "abstract propositions, or to declare principles or rules of law, which cannot affect the matter at issue . . . ." *Id.* (*quoting Mills*, 159 U.S. at 653). Therefore, "[i]f no existing controversy is present, the case is moot and

9

an appellate court ordinarily will not consider the case on its merits." *Office of Public Defender v. State*, 413 Md. 411, 422 (2010) (*citing Suter v. Stuckey*, 402 Md. 211, 219 (2007)).

Again, Ms. Holloman asked in her motion for the court to provide her an opportunity to present her matter to the grand jury either in person or through reasonable papers or any other relief deemed appropriate by the court, citing the common law and CJ § 8-417:

> [T]o present information about the death of her son to the Grand Jury. . . . Alternatively, [Ms. Holloman] can submit written information to the Grand Jury in support of her request. [Ms. Holloman] would accept reasonable time or page constraints for presenting such information.
>
> * * *
>
> [Ms. Holloman] seeks to enforce her Order from November 23, 2016 or alternatively, as there is no limitation on presenting to the Grand Jury for criminal investigation, to obtain another Order or to have an opportunity for this matter to be presented to the Grand Jury. She seeks this court to identify those steps necessary to present the matter to the Grand Jury, including permitting her a reasonable opportunity to present information in support of her claims, personally or through papers.

Although in November 2016 the grand jury was presented with Ms. Holloman's inquiry, no documents were attached or actually presented. It isn't surprising, then, that the grand jury declined, on a non-record with no argument or presentation, to commence an investigation.

In response to Ms. Holloman's later motion for relief, the circuit court wrote a memorandum requesting that the grand jury judge "take the necessary steps to bring this matter to the attention of the Grand Jury." The grand jury judge forwarded the request and the documents contained in the court file to the grand jury for the May 2019 Term, but that

grand jury didn't have the time to consider whether an investigation was warranted. The request and court file were then presented to the grand jury for the September 2019 Term, and that grand jury declined to conduct an investigation. A copy of the grand jury's written notice declining to investigate was attached to the letter sent to Ms. Holloman. The notice showed three available options, and the grand jury marked its selection, with no explanation of the information that was considered, what was presented, or why the grand jury decided to decline.

Two weeks after the grand jury's letter, the court addressed Ms. Holloman's motion for relief. The court found that copies of the documents contained in the court file had been presented to the grand jury and that the grand jury declined to conduct an investigation, and as a result the court denied Ms. Holloman's motion for relief as moot. The State characterizes this ruling as affording Ms. Holloman the relief that she requested, and argues from this that the circuit court correctly denied the motion as moot. But the relief the court allowed was different from the relief she requested. Ms. Holloman specifically requested either to present information directly to the grand jury or the opportunity to compile the papers for presentation to the grand jury. She was allowed neither. For us to consider whether she is entitled to more is not to consider an abstract proposition; for us to find the appeal moot, we necessarily would have to decide that the State is right about the scope of her potential remedies. The appeal isn't moot, and we will address the merits next.

## B.  CJ § 8-417 Provides No Private Right Of Action.

In the circuit court and before this Court, Ms. Holloman argues that CJ § 8-417 compels a grand jury to carry out an investigation on behalf of a private citizen when a

11

judge of the circuit court so directs.[3] The State responds that CJ § 8-417 does not provide an express private right of action, and therefore that Ms. Holloman cannot compel the circuit court to order an investigation. The State is right.

"[A] private cause of action . . . does not exist simply because a claim is framed that a statute was violated and a plaintiff or class of plaintiffs was harmed by it." *Baker v. Montgomery Cnty.*, 427 Md. 691, 708–09 (2012) (*citing Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)). Whether a private right of action exists is a matter of statutory construction. *Id.* at 709. Courts and Judicial Proceedings Article § 8-417 was enacted originally in 2006, and the language was derived, without substantive change, from the former Article 4, Section 7-7 of the Public Local Laws of Baltimore City. In 2011, the legislature made a small adjustment to subsection (b) that isn't relevant here.[4] In its current form, CJ § 8-417 requires a grand jury to carry out an investigation if directed by a judge:

> (a) This section applies only to a grand jury for Baltimore City.
>
> (b) In addition to any other duty imposed by law, each grand jury shall carry out an investigation if a judge of the circuit court directs.
>
> (c) At the end of the period for which a grand jury sits, the grand jury shall submit to the jury commissioner of the circuit court a report on each of its investigations and recommendations.

---

[3] The availability or not of a private right of action under CJ § 8-417 was not addressed in the original briefs that either party filed. The issue was raised during oral argument, and Ms. Holloman sought leave to file a supplemental brief on the issue. We granted the motion and allowed the State an opportunity to respond, which it did.

[4] As the statute stands after the 2011 amendment, subsection (b) states that "*if* a judge of the circuit court directs." CJ § 8-417 (emphasis added). The 2006 version of the statute stated "*as* a judge of the circuit court directs." 2006 Md. Laws, Chap. 372, § 13.

CJ § 8-417(b) says nothing, however, that creates an express private right of action to compel a judge to order one. The question then becomes whether there is an implicit right of action Ms. Holloman could seek to assert. There isn't.

Ms. Holloman directs us to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982), for the assertion that we should analyze the existence or not of a private right of action under the law that existed at the time the legislation was enacted. She argues that because the Baltimore City Public Local Law from which this statute was derived was enacted in 1968, we should follow the "special class" analysis from *Texas & Pacific R.R. Co. v. Rigsby*, 241 U.S. 33 (1916), rather than "modern day" analysis established in *Cort v. Ash*, a unanimous Supreme Court decision modifying its approach. 422 U.S. 66 (1975).

This requires a closer look at those cases. In *Merrill Lynch*, the Supreme Court explained the history of judicial analysis of determining whether a private right of action exists. 456 U.S. at 374. The Court described *Rigsby* as holding that "[i]f a statute was enacted for the benefit of a special class, the judiciary normally recognized a remedy for members of that class," *id.* (*citing Rigsby*, 241 U.S. at 39–40), and that for a member of that special class, it was the exception rather than the rule for a private right of action not to be recognized. *Id.* Put another way, congressional silence or ambiguity then were considered insufficient reasons not to recognize a private right of action. *Id.* at 375. But the Court shifted course unanimously in *Cort* in light of the increased complexity and volume of federal legislation over time. 422 U.S. at 66–67. Rather than looking at whether legislation recognizes a special class of beneficiaries, the Court explained in *Merrill Lynch*,

13

"our focus must be on 'the intent of Congress.'" 456 U.S. at 377 (*quoting Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981)). The Court then went on to analyze Congress's intent vis-à-vis a private right of action when it passed the commodities exchange legislation at issue in the case.

The result is that when determining whether the legislature intended to create a private right of action, we analyze the state of the law at the time the statute was enacted, not the analytical technique governing private rights of action at the time of passage. *Merrill Lynch* proved the point: the commodities statute at issue had been amended by Congress in 1974, before *Cort* changed the analysis in 1975, but the Court looked to Congress's intent in 1974 when analyzing (in 1982) whether a right of action existed. *Id.* at 381. So if Ms. Holloman's analytical approach here were correct, the Court in *Merrill Lynch* would have looked for a special class under *Rigsby* rather than looking purely at intent, as *Cort* directs.

Like the Supreme Court, Maryland courts analyzing private rights of action focus primarily on legislative intent. *See, e.g.*, *Sugarloaf Citizens Ass'n, Inc. v. Gudis*, 78 Md. App. 550, 556 (1989). Courts also can consider legislative history and purpose, whether a particular class was intended to benefit from the statute, and the existence of express statutory remedies. *Id.* at 557. But where the legislative history is silent "as to whether a statute gives rise to such a right," that silence weighs heavily against private right of action. *Sugarloaf*, 78 Md. App. at 557. The bill file for CJ § 8-417 from 2006, when the statute was enacted, and the fiscal note from the amendment in 2011, contain one potentially illuminating document—the background section of the Fiscal Note for the 2011

14

Amendment, which explains the duty of the grand jury and emphasizes that grand jury proceedings are secret and that only authorized persons are allowed in the room:

> The grand jury system dates back to English law at the time of settlement of the United States. Grand juries consist of 23 members plus alternates. Unlike a petit jury which listens to evidence in a courtroom and decides the facts in a particular case, a grand jury decides if there is probable cause to charge someone with a crime, not whether the defendant is guilty or innocent. Grand juries are also authorized to conduct their own investigations. Grand juries do not hear both sides of the case; defendants and defense counsel do not participate in grand jury proceedings. Grand jury proceedings are held in secrecy and only authorized persons are allowed to be in the grand jury room. Grand jurors sit for a four-month term.
>
> Under Maryland law, grand juries are also required to tour correctional facilities in their jurisdiction each year to investigate their operation and management.

2011 Md. Laws, S.B. 374. That's as close as the legislative history gets to an implicit private right of action, and the silence bolsters the textual silence. So although we will examine the remaining factors, the absence of any indication that the General Assembly considered creating a private right of action weighs heavily against recognizing one. *See Sugarloaf*, 78 Md. App. at 556–57.

It also does not appear that CJ § 8-417 "was [] designed to protect any sub-group of the public, or to preserve or create individual rights." *Id.* at 558–59. Statutes can generally be distinguished between those creating individual rights and those benefitting the public at large. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 690–91, n.13 (1979) (explaining that statutes creating individual rights use language such as "no person," "the carrier," "[r]epresentatives," and "an employee"); *see also Baker*, 427 Md. at 711; *Sugarloaf*, 78 Md. App. at 558–59. A statute that involves a general benefit or command doesn't create

15

an inference that the legislature intended an implied private right of action. *See Baker*, 427 Md. at 710–11. Subsection (b) states that: "In addition to any other duty imposed by law, each grand jury shall carry out an investigation if a judge of the circuit court directs." The statute contains a general command that a circuit court judge can direct the grand jury to carry out an investigation, but nothing else that could support an inference that the General Assembly intended to allow private citizens to enforce or initiate such a command.

There also appears to be no intention on the part of the General Assembly to create an express statutory remedy for private citizens alongside the authority for judges to order grand jury investigations. In 2006, when the legislature conducted a major review of the statutes relating to grand juries, and the state legislature adopted the language from the former Public Local Law of Baltimore City, there was no discussion as to a statutory remedy or a private right of action. The committee notes contain only two relevant sections of text regarding CJ § 8-417:

> Subsections (b) and (c) of this section are new language derived without substantive change from former Public Local Laws, Art. 4 [Baltimore City], § 7–8 as it related to investigations other than visits to correctional facilities. The codification of the Baltimore City provision here is merely for convenience and is not intended, by reenactment of a single provision, to alter any power of a grand jury with regard to recommendations in other counties. . . .
>
> In subsection (b) of this section, reference to "a judge" is substituted for the former reference to "the Judges of the Circuit Court for Baltimore City or the court's designated visiting Judge", to clarify that any one of the active judges may order an investigation. The substitution includes a designated judge who, while designated, is deemed a judge of the court to which designated.

2006 Md. Laws H.B. 1024. This note reveals an intent to retain the scope of this former

16

Public Local Law, to keep this authority limited to judges of the Circuit Court for Baltimore City and not to expand to other counties or anyone else. And it bolsters the conclusion that the purpose of the law is to allow judges to direct grand jury investigations, not to allow individual citizens to seek to compel them.

Normally, "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode," *Botany Mills v. United States*, 278 U.S. 282, 289 (1929), meaning that when a statute provides a remedy or right to an individual or group, it closes the availability of that remedy or right to others. And since no other remedy appears in the text or structure of CJ § 8-417 we must be cautious not to read one into it. *See Baker*, 427 Md. at 713. We hold, therefore, that CJ § 8-417 does not provide a private right of action to direct a grand jury investigation, and that the circuit court did not err in denying Ms. Holloman relief under that statute.

### C. Ms. Holloman Has The Right At Common Law To Seek Permission To Appear Before The Grand Jury And To Compile The Materials To Support Her Request.

Ms. Holloman does, however, have rights at common law, and the State acknowledges as much. The question is how far those rights extend. She contends that she has the right to present her case personally to the grand jury, or at least to ask the foreperson permission to appear. The State says that she received the full measure of relief at common law when the circuit court forwarded the court file to the grand jury. We hold that Ms. Holloman has the right to ask the grand jury to initiate an investigation and to prepare the materials and information for submission to the grand jury in support of that request.

To draw the contours of this right, we must first take a closer look at the two cases

17

articulating and applying it. *Brack v. Wells* is the first and seminal case addressing a citizen's right to appear before the grand jury. 184 Md. at 92–93. Mr. Brack believed he was the victim of barratry and perjury, so he filed a petition for writ of mandamus requesting the State's Attorney for Baltimore City present evidence of these crimes to the grand jury. *Id.* at 88. Before filing his petition, Mr. Brack had requested an investigation by the magistrate at the police station and the state's attorney. *Id.* at 89. The court declined to issue the writ and Mr. Brack appealed. *Id.*

Preliminarily, the Court explained that the petition must provide a complete factual account for it to be valid and have the desired effect. *Id.* at 88. But ultimately, a writ of mandamus is not the appropriate procedural tool "[w]hen an act rests by statute in the discretion of a person." *Id.* at 90. The decision to prosecute lies within the discretion of the State's Attorney and unless this discretion is abused, a writ is not the appropriate remedy. *Id.* Further, in Maryland, a writ of mandamus will not be granted where an adequate legal remedy is available. *Id.* at 90–91 (*citing Brown v. Bragunier*, 79 Md. 234, 236 (1894)).

The Court recognized, though, that the grand jury takes an oath to "diligently inquire" into all matters that come to its knowledge. *Id.* at 91. And "[t]he inquisitorial powers of the grand jury are not limited to cases in which there has been a preliminary proceeding before a magistrate nor to cases laid before them by the Court or State's Attorney," because in Maryland, grand juries have "inquisitorial powers [that] are broad, full and of a plenary character." *Id.* The Court held, however, that Mr. Brack's writ of mandamus was properly denied because of the specific facts of his allegation. *Id.* at 92.

After the Court issued its initial opinion in *Brack*, the State filed a motion for

18

reconsideration asking the Court to delete two paragraphs of the opinion that articulated a citizen's right to present his case to the grand jury. *Id.* Instead of deleting the paragraphs, the Court wrote a supplemental opinion clarifying its holding. *Id.* at 92–97. The Court stated that after exhausting remedies available through the magistrate and state's attorney, a citizen has the right to ask the grand jury for permission to appear:

> It is the opinion of this Court that every citizen has a right to offer to present to the grand jury violations of the criminal law. This does not mean that an individual member of that body may be approached. The citizen should exhaust his remedy before the magistrate and State's Attorney as was done in the instant case, and if relief can not be had there, he then has the right to ask the foreman of the grand jury for permission to appear before that body.

*Id.* at 97.

In the second case, *Sibley v. Doe*, this Court held that Mr. Sibley's rights were not violated where the State's Attorney presented his allegations to the grand jury foreperson and asked for permission for Mr. Sibley to present his case. 227 Md. App. at 655. The grand jury declined to investigate, but because the State's Attorney had presented documents compiled by Mr. Sibley to the grand jury for their consideration, Mr. Sibley's common law rights were not violated. *Id.* at 655–56.

Initially, Mr. Sibley petitioned the circuit court for a declaratory judgment authorizing him to appear before the grand jury to present evidence of an alleged crime that he wanted the grand jury to investigate—that then-President Obama was violating Maryland criminal law by using fraudulent government identification. *Id.* at 649–50. After extensive procedural history similar to Ms. Holloman's, Mr. Sibley appealed. *Id.* at 651.

19

We began by analyzing a key phrase in *Brack*: that a citizen "has the right to ask the foreman of the grand jury for permission to appear before" the grand jury. 184 Md. at 97; *Sibley*, 227 Md. App. at 654. We interpreted that holding to mean that a person has the right to ask the foreperson for permission to appear before the grand jury, not the right to present in person before the foreperson. *Sibley*, 227 Md. App. at 654. We explained that *Brack* left little room for ambiguity because it clarified that citizens cannot approach members of the grand jury individually and must first exhaust all other remedies before being able to appear before the grand jury. *Id.* at 654–55.

We recognized that Mr. Sibley had exhausted all other remedies, as *Brack* required: "The citizen should exhaust his remedy before the magistrate and State's Attorney[,] . . . and if relief can not be had there, he then has the right to ask the grand jury for permission to appear before that body." *Brack*, 184 Md. at 97. Mr. Sibley wrote first to the circuit court requesting an arrest warrant, then wrote the State's Attorney seeking permission to appear before the grand jury. *Sibley*, 227 Md. App. at 655. The State's Attorney took a sealed envelope, the contents of which were compiled by Mr. Sibley, to the foreperson. *Id.* Even though the grand jury declined to investigate, Mr. Sibley received a letter from the grand jury stating it received a sealed packet of documents that included Mr. Sibley's request that an investigation be opened:

> On January 29, 2015, the Grand Jury for Montgomery County, Maryland received a sealed packet from you asking that in [sic] investigation be opened into whether documents relating to President Obama's eligibility for office are fraudulent. The Grand Jury declined to investigate this matter.

*Id.* We held that Mr. Sibley's rights were not violated because he had been able to exercise

his right to ask the foreperson for permission to present to the grand jury when the State's Attorney presented the sealed envelope of materials he had compiled. *Id.* at 655–56.

In general, *Brack* established a right at common law to make contact with the grand jury and request that it investigate. 184 Md. at 92. *Sibley* interpreted the holding in *Brack* to allow a person to ask the foreperson for permission to appear before the grand jury, but not to grant a citizen the right to present in person before the foreperson. *Sibley*, 227 Md. App. at 655. *Sibley* also held that the right at common law is satisfied by the submission of documents, even if presented by another person. *Id.*

Ms. Holloman has satisfied all of the conditions precedent to her right to ask the grand jury to open an investigation. She has exhausted all other available remedies. She contacted the State's Attorney, she filed a petition for writ of mandamus, and she later filed a motion for relief requesting to present to the grand jury. Initially, in 2016 her request was brought to the attention of the grand jury, but it declined to investigate. Ms. Holloman asked what materials were considered by the grand jury in 2016, and the grand jury and circuit court replied that no materials were submitted for consideration. The second time, in 2019, the grand jury was presented with brief directions from the circuit court and the documents contained in the case file.

This leaves Ms. Holloman one important step short of *Sibley*: unlike Mr. Sibley, Ms. Holloman has not been afforded the opportunity to compile herself the documents presented to the grand jury. The "sealed packet" the grand jury received most recently came not from her, but from the circuit court case file, which contains only letters and filings documenting her efforts to get before the grand jury. The only facts or evidence that the

21

court file contains are her account of events written in the petition and amended petition for writ of mandamus.

When the State's Attorney exercises their discretion to present a case to a grand jury, their office (through an Assistant State's Attorney) has the opportunity to present evidence and compel testimony demonstrating probable cause to believe a crime has been committed. But when a citizen seeks permission to ask the grand jury to consider a matter for investigation, no attorney or advocate is allowed to appear and explain how the facts presented create probable cause. The citizen can't offer physical evidence or interrogate witnesses. The citizen's only ability to control what the grand jury considers is to compile the materials that ultimately are forwarded to the grand jury. For Ms. Holloman's common law right to ask the foreperson for permission to appear to have meaning, we hold that she, like Mr. Sibley, must be allowed to compile the documents and other materials she wishes to have presented to the grand jury, subject to reasonable volume and scope limitations. And as such, we reverse the summary judgment in favor of the State and remand with directions that the circuit court permit Ms. Holloman a reasonable opportunity to compile documents and materials for forwarding to the foreperson so that the grand jury can consider whether to investigate possible criminal charges arising from her son's death.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED WITH DIRECTIONS FOR THE CIRCUIT COURT TO CONDUCT FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ASSESSED TO THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1976s19cn.pdf